UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER LADAWN REESE, | Case No. 2:24-cv-2007-JDP (SS) |
| Plaintiff, | |
| v. | ORDER |
| FRANK BISIGNANO, Commissioner of Social Security, | |
| Defendant. | |

      Plaintiff challenges the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") terminating her previously granted Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Both parties have moved for summary judgment. ECF Nos. 11 & 15. For the reasons discussed below, plaintiff's motion for summary judgment is denied, and the Commissioner's is granted.

**Standard of Review**

      An Administrative Law Judge's ("ALJ") decision to terminate disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct legal standards were applied. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such

relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

The SSA may terminate disability benefits upon finding that the claimant's condition has medically improved, and the claimant is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1). "To determine whether there has been medical improvement, an administrative law judge (ALJ) must compare the current medical severity of the claimant's impairments to the medical severity of the impairment at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled." *Attmore v. Colvin*, 827 F.3d 872, 873 (9th Cir. 2016) (quotations omitted); *see also* 20 C.F.R. § 416.994(b).[1] Medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 416.994(b)(1). There is no presumption of continuing disability; that is, "a disability determination must be made 'on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.'" *Lambert v. Saul*, 980 F.3d 1266, 1276 (9th Cir. 2020) (quoting 42 U.S.C. § 423(f)).

---

[1] The social security regulations prescribe an eight-step framework for determining whether a claimant is no longer disabled. 20 C.F.R. §§ 416.994(b)(5)(i)-(viii).

2

**Background**

In 2018, plaintiff was found to be disabled and was awarded SSI benefits. Administrative Record ("AR") 275-83. On September 6, 2019, after conducting a continuing disability review, the SSA determined that plaintiff was able to work and issued her a notice of disability cessation. AR 308-11. After her request for reconsideration of that determination was denied, plaintiff appeared and testified at a hearing before an ALJ. AR 250-70, 316-30. On September 21, 2023, the ALJ issued a decision finding that plaintiff was no longer disabled. AR 11-22. Specifically, the ALJ found that:

1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated February 22, 2018. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairments: status-post benign tumor excision, neck and bilateral shoulder strain, asthma, mood disorder, and anxiety, and these impairments were found to medically equals [sic] the criteria section of 1.04B of 20 CFR Part 404, Subpart P, Appendix 1.

3. The medical evidence establishes that, since the cessation date of June 6, 2019, the claimant has the following medically determinable impairments: tendinitis of the right shoulder, chronic thoracic spine pain, asthma, cannabis use disorder, major depressive disorder, and generalized anxiety disorder. These are the claimant's current impairments.

4. Since the cessation date of June 6, 2019, the claimant has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

* * *

5. Medical improvement occurred on June 6, 2019.

* * *

6. The medical improvement is related to the ability to work because, by the cessation date of June 6, 2019, the claimant's CPD impairments(s) [sic] no longer met or medically equaled the same listing(s) that was met at the time of the CPD.

3

7. Since the cessation date of June 6, 2019, the claimant has continued to have a severe impairment or combination of impairments.

\* \* \*

8. Since the cessation date of June 6, 2019, based on the current impairments, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except stand 2 hours at a time up to 4 hours for a total day; walk 2 hours at a time up to 4 hours per day; reaching overhead with the right upper extremity and push/pull occasionally; all other reaching with right upper extremity is frequently; right hand dominant; all posturals are occasionally except climbing is frequently and balancing continuously; unprotected heights, moving mechanical parts, operating a motor vehicle dust, odors, fumes, and pulmonary irritants never; humidity and wetness, and extreme temperatures occasionally; vibrations frequently; only occasional contact with the public, co-workers, and supervisors.

\* \* \*

9. The claimant has no past relevant work.

10. On the cessation date of June 6, 2019, the claimant was a younger individual age 18-49.

\* \* \*

11. The claimant has a limited education.

\* \* \*

12. Transferability of job skills is not an issue because the claimant does not have past relevant work.

13. Since the cessation date of June 6, 2019, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy.

\* \* \*

14. The claimant's disability ended on June 6, 2019, and the claimant has not become disabled again since that date and through the date of this decision.

AR 13-22 (citations to the code of regulations omitted).

Plaintiff requested review by the Appeals Council, which denied the request. AR 1-5. He now seeks judicial review under 42 U.S.C. § 405(g).

**Analysis**

Plaintiff argues that the ALJ erred at seventh step of the sequential evaluation by relying on the vocational expert's testimony to find that she was not disabled. Specifically, she contends that the ALJ failed to resolve apparent conflicts between the vocational expert's testimony and the information provided by the Dictionary of Occupational Titles ("DOT").

At the seventh step, the ALJ is required to "identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite her identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); 20 C.F.R. § 416.994(b)(5)(vii). In doing so, the ALJ must first assess the claimant's residual functional capacity ("RFC"), which is the most the claimant can do despite her physical and mental limitations. 20 C.F.R. §§ 416.994, 416.945(a)(1). The ALJ then must consider what potential jobs the claimant can perform given her RFC. 20 C.F.R. § 416.966. "In making this determination, the ALJ relies on the DOT, which is the SSA's primary source of reliable job information regarding jobs that exist in the national economy." *Zavalin v. Colvin*, 778 F.3d 842, 845-46 (9th Cir. 2015) (quotation marks omitted).

To meet this burden, an ALJ may utilize a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Generally, occupational evidence provided by a vocational expert should be consistent with the occupational information supplied by the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p, at *4). However, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435. "[W]hen a vocational expert provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that vocational evidence and information provided in the Dictionary

5

of Occupational Titles." *Id.* (internal quotations and emphasis omitted). "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F. 3d 846.

After plaintiff's administrative hearing, the ALJ sent the VE interrogatories that asked him to consider whether there were jobs in the national economy that could be performed by a hypothetical individual with plaintiff's age, education, work experience, and RFC. AR 487-91. The VE responded that such an individual could work as a hand packer, DOT 920687146; hand laborer, DOT 922587010; and cleaner, DOT 323687014. AR 497. Based on this evidence, the ALJ concluded that plaintiff was no longer disabled because there was a significant number of jobs in the national economy that she could perform. AR 21-22.

Plaintiff first argues that the ALJ erred in relying on the VE's testimony that she could work as a hand packer and hand laborer because the VE included the incorrect DOT codes. ECF No. 11 at 10-11. Plaintiff also argues that the ALJ erred in relying on the VE's statement that she could work as a cleaner without resolving the apparent conflict with her RFC and DOT's description of the job as light work. *Id.* at 7-10. Plaintiff contends that light work typically requires the ability to walk or stand for six hours total in an eight-hour workday, which conflicts with the ALJ's finding that plaintiff could perform light work with the exception of "stand[ing] 2 hours at a time up to 4 hours for a total day; walk[ing] 2 hours at a time up to 4 hours per day." AR 21; ECF No. 11 at 9. Therefore, plaintiff argues, that standing and walking in equal proportion exceeds the demands for light work. *Id.* Because the court finds that there is no conflict between the VE's testimony that plaintiff could work as a cleaner and the DOT's description of that job, plaintiff's motion is denied, and the Commissioner's is granted.

<u>Incorrect DOT Codes</u>

Plaintiff argues that the VE provided the ALJ with incorrect codes for the positions of hand packager and hand laborer and that those misidentifications require remand. ECF No. 11 at 10-11. However, plaintiff acknowledges that the position of cleaner does represent a significant number

of jobs (381,000). *Id.* at 11. The court is satisfied that this error is harmless. *See Gutierrez v. Comm. of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (holding that 25,000 jobs available in the national economy presented a "close call," but found that this did constitute a significant number of jobs); *Buckins v. Berryhill*, 706 F. App'x 380, 381 (9th Cir. 2017). Indeed, plaintiff takes no issue with the number of housekeeper jobs in the national economy, which exceeds the requirement for a "significant amount." ECF No. 11 at 11.

Light Work Limitation

The SSA's regulations describe light work as involving "a good deal of walking or standing . . . ." 20 C.F.R. § 416.967(b). Social Security Ruling 83-10 explains that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). Plaintiff argues that her limitations relating to standing and walking are inconsistent with the limitations of light work, which requires approximately six hours of standing or walking in an eight-hour workday. ECF No. 11 at 9-10. The Commissioner contends that the ALJ did not limit plaintiff to only four hours of standing or walking. According to the Commissioner, the ALJ found that plaintiff could "be on her feet for eight hours in a workday—up to four hours standing and up to four hours walking." ECF No. 15 at 5

The Commissioner's argument that plaintiff could "be on her feet for eight hours" defies reason. The most logical reading of the ALJ's RFC determination is that plaintiff was limited to either walking or standing for up to four hours a day, not four hours for each activity. Indeed, an individual limited to standing for four hours in a workday would not be able stand for that duration and then walk, an activity that requires standing-like exertion, for an additional four hours.

Nevertheless, the court does not find that plaintiff's limitation to walking or standing for four hours conflicts with ability to work as a cleaner, as that position is described by the DOT. The definition of "light work" under the DOT is exceedingly broad, and in light of the "and/or" language, jobs need not meet all of the criteria outlined in the definition to be classified as light work. Put another way, some light jobs might be compatible with the ALJ's RFC, while others might not be. As such, there is no apparent conflict between the VE's testimony and the DOT.

Indeed, the RFC's limitation to standing and walking up to four hours nonetheless implicates standing and walking to a significant degree, which is consistent with one of the DOT's criteria for light work. *See* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983); *see also Elliott v. Comm'r of Soc. Sec.*, 2016 WL 2899472, *6 (E.D. Cal. May 17, 2016); *Lizarraga v. Berryhill*, 2018 WL 827895, at *4 (N.D. Cal. Feb. 12, 2018); *Jones v. Colvin*, 2015 WL 3952309, at *2 (C.D. Cal. June 29, 2015) (finding that a light work RFC with a 4-hour stand/walk limitation did not conflict with SSR 83-10).

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 11, is DENIED.

2. The Commissioner's cross-motion for summary judgment, ECF No. 15, is GRANTED.

3. The Clerk of Court is directed to enter judgment in defendant's favor and close this matter.

IT IS SO ORDERED.

Dated:   August 20, 2025

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE